Jason M. Drangel (JMD 7204)
jdrangel@ipcounselors.com
William C. Wright (WW 2213)
bwright@ipcounselors.com
Ashly E. Sands (AES 7715)
asands@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2410
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391

*Attorneys for Plaintiff*
*Shoyoroll Corporation*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

SHOYOROLL CORPORATION
*Plaintiff*

v.

BEST BUY TOBACCO CORPORATION and
MUSA RASHAD a/k/a CHARLES HARPER
a/k/a CHARLIE HARPER a/k/a JAZZIE
RASHAD a/k/a PASHMINA RASHAD a/k/a
RASHAD IQBAL a/k/a JEHANZEB
RASHAD; JOHN DOES 1-5 and XYZ
COMPANIES
*Defendants*

**CIVIL ACTION No.** 1:15-cv-04885

**COMPLAINT**
**JURY TRIAL REQUESTED**

Plaintiff, Shoyoroll Corporation ("Plaintiff" or "Shoyoroll"), a corporation organized under the laws of the state of California, by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for: trademark infringement of federally registered

trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 et seq.; counterfeiting of federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims ("Action").  Plaintiff seeks injunctive relief, an accounting, compensatory damages and/or statutory damages, treble damages, attorney's fees and costs, and such other relief as the Court deems proper.

### JURISDICTION AND VENUE

2.      This Court has Federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq.; pursuant to 15 U.S.C. § 1121; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition; as well as pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(a).

3.      Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391 because Defendants (defined below) conduct business in this district and, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and has caused damage to Plaintiff in this district.

4.      Personal jurisdiction exists over Defendants because, upon information and belief, Defendants conduct business in New York and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play

and due process.

## THE PARTIES

5.      Plaintiff Shoyoroll is a corporation organized and existing under the laws of the state of California, having its principal place of business at 10551 Bloomfield Street, Los Alamitos, CA 90720.

6.      Upon information and belief, Defendant Best Buy Tobacco Corporation ("BBT") is an active corporation organized and existing under the laws of the State of New York, having its principal place of business at either 50 Brook Avenue, Deer Park, NY 11729 or 26 Aero Road, Bohemia, NY 11716.

7.      Upon information and belief, Defendant Musa Rashad a/k/a Charles Harper a/k/a Charlie Harper a/k/a Jazzie Rashad a/k/a Pashmina Rashad a/k/a Rashad Iqbal a/k/a Jehanzeb Rashad ("Rashad") is an individual whose true address is currently unknown.  Upon information and belief, Defendant Rashad's last known addresses are: 83 Nichols Road, Nesconset, New York 11767 and 300 Mercer Street, Apartment 9K, New York, NY 10003.

8.      Upon information and belief, Defendant BBT and Defendant Rashad (hereinafter collectively referred to as, "Defendants") have, at all relevant times herein, committed the unlawful acts set forth herein, including knowingly and willfully manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling counterfeit and/or infringing Shoyoroll Products (defined below), or otherwise violating Plaintiff's intellectual property rights in this judicial district.

9.      Upon information and belief, Defendant Rashad is an officer, director, shareholder and/or owner of Defendant BBT and the unlawful acts, alleged herein, were performed by Defendant Rashad within the course and scope of such position(s).  Defendants

enriched themselves by fraudulent and illegal conduct as alleged herein, while Plaintiff suffered enormous financial injury.

10.     Upon information and belief, adherence to the fiction of the existence of Defendant Rashad as separate and distinct from Defendant BBT, would permit an abuse of corporate privilege and would permit an injustice in that Defendant Rashad would succeed in avoiding legally incurred liabilities while maintaining the benefits of the corporate status.

11.     Upon information and belief since the time of their creation, now, and all times relevant to this Complaint such a unity of interest and ownership existed between Defendant Rashad and Defendant BBT, such that separate personalities did not and do not in reality exist. Unidentified John Does 1-5 and XYZ Companies are, upon information and belief, individuals and/or business entities that are acting in concert with or are associated with Defendant BBT and/or Defendant Rashad's illegal activities, as alleged below.

12.     Plaintiff is presently unaware of the true names of John Does 1-5 and XYZ Companies. Plainitff will amend this Complaint upon discovery of the identities of such defendants.

<u>GENERAL ALLEGATIONS</u>

**Shoyoroll and its Well-Known *Jiu Jitsu* Products**

13.     Shoyoroll is a specialized apparel company that designs, develops, markets and sells traditional *jiu jitsu* fighter uniforms known as the '*Gi*' – a cloth garment consisting of loose-fitting pants and a jacket along with ancillary products.

14.     The Shoyoroll brand (comprised of the SHOYOROLL trademark defined below) was created in 1999 and has since become such a trailblazer in the *jiu jitsu* apparel industry that it is now the must have brand of fighter apparel.  To date, Shoyoroll has released over thirty (30)

unique, limited edition *gis* incorporating the Shoyoroll brand ("Authentic Products") – a majority of which have sold out within less than twenty (20) minutes of their release.

15.     Shoyoroll sells its Authentic Products to thousands of consumers around the globe exclusively through its retail websites.  Further, given the exceptionally high demand for the Authentic Products, but limited quantities thereof, there has developed a very active online re-sale market in which the Authentic Products have been re-sold for prices as high as two thousand dollars ($2,000.00) per *gi*.

16.     The internationally successful Shoyoroll brand has attained a reputation for manufacturing unique, high-quality, premium fighter apparel and, as a result, has been acclaimed in various online publications within the *jiu jitsu* industry, including but not limited to: www.mmafrenzy.com,     www.fighttrends.com,     www.digitsu.com,     www.bjjee.com,     etc. Moreover, the Authentic Products are endorsed and worn by several of the most well-known and highly acclaimed *jiu jitsu* fighters in the world.

17.     Shoyoroll's success is also due to its use of the highest quality materials and processes in producing its Authentic Products.

18.     In addition, Shoyoroll owes a substantial amount of the success of the Authentic Products to its consumers and the word-of-mouth buzz that its consumers have generated.

19.     While Shoyoroll has gained significant common law trademarks and other rights in its Authentic Products through its extensive use, advertising and promotion, Shoyoroll has also protected its valuable rights by filing for and obtaining a federal trademark registration.

20.     Shoyoroll is the owner of U.S. Trademark Registration No. 4,083,765 for the word mark "SHOYOROLL" for a wide variety of goods in Class 25 ("Mark").  A true and correct copy of the registration for the Mark is attached hereto as **Exhibit A** and incorporated

herein by reference.

21.    The Mark is currently in use in commerce in connection with the Authentic Products.  The date of first use of the Mark in connection with Authentic Products is no later than December 18, 2000.

22.    As a result of Shoyoroll's efforts, the high quality of the Authentic Products and specifically, its marketing and promotional efforts, extensive press and media coverage and word of mouth buzz, Shoyoroll, its Authentic Products and its Mark have become prominently placed in the minds of the public.  Retailers, retail buyers, consumers, and the members of the public have become exceedingly familiar with Shoyoroll, its Authentic Products and its Mark and have come to associate them exclusively with Shoyoroll.  Shoyoroll has acquired a valuable reputation and goodwill among the public as a result of such association (i.e., acquired distinctiveness or secondary meaning).

23.    Shoyoroll has gone to great lengths to protect its interests in and to its Mark.  No one other than Shoyoroll is authorized to manufacture, import, export, advertise, distribute, offer for sale, or sell any Authentic Products or other goods utilizing the Mark, or any confusingly similar marks, without the express written permission of Shoyoroll.

**Defendants' Wrongful and Infringing Conduct**

24.    Particularly in light of the success of Plaintiff and its Authentic Products, both Plaintiff and its Authentic Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame Plaintiff has amassed in its Mark and Authentic Products.

25.    Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' actions, which vary, and include one or more of the following:

manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling counterfeit Shoyoroll Products to U.S. consumers bearing Plaintiff's Mark, and/or marks that are confusingly or substantially similar to and constitute an infringement of Plaintiff's Mark (hereinafter referred to as, "Infringing Products" or "Counterfeit Products").

26. On or about January 2015, Plaintiff was informed by a consumer that Defendant BBT had been offering for sale and selling Infringing Products. Since then, about twenty (20) individuals ("BBT Customers") have contacted Plaintiff in regards to Defendant BBT offering for sale and selling Infringing Products. The BBT Customers claim that they purchased the Infringing Products from BBT believing BBT to be a legitimate re-seller of the Authentic Products. The BBT Customers paid for the Infringing Products through PayPal and subsequently received shipments containing the Infringing Products from a few different locations throughout New York.

27. Several of the BBT Customers have indicated that Defendant Rashad, doing business under the assumed name of "Charlie Harper", was their main contact for the transaction involving the sale of Infringing Products. Moreover, numerous other BBT Customers have also indicated that various individuals who identified themselves as "members of the Charlie Harper team" or colleagues of Charlie Harper contacted them in regards to the sale of Infringing Products.

28. Plaintiff has confirmed that the Infringing Products sold by Defendants are counterfeit and infringe Plaintiff's Mark. True and correct copies of photographs of some of the Infringing Products are attached hereto as **Exhibit B** and incorporated herein by reference.

29. Defendants have infringed Plaintiff's Mark by manufacturing, importing,

exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products that prominently display Plaintiff's Mark.

30.    Defendants are not, nor have they ever been, authorized distributors or licensees of the Authentic Products.   Neither Plaintiff nor any of Plaintiff's authorized agents have consented to Defendants' use of Plaintiff's Mark, nor have they consented to Defendants' use of any identical or confusingly similar marks.   Plaintiff has never authorized Defendants to manufacture or import, any of its Authentic Products or products bearing its Mark.

31.    By the Defendants' dealings in Infringing Products (including, but not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products) as alleged herein, Defendants have violated Plaintiff's exclusive rights in and to its Mark and have used marks, images and/or designs that are confusingly similar to, identical to, and constitute counterfeiting and/or infringement of Plaintiff's Mark, to confuse consumers and aid in the promotion and sales of their Infringing Products.  Defendants' conduct and use began long after Plaintiff's adoption and use of its Mark.

32.   Prior to and contemporaneous with their unlawful actions alleged herein, Defendants had knowledge of Plaintiff's ownership and/or exclusive license of its Mark and of the extraordinary fame and strength of Plaintiff's Mark and the incalculable goodwill associated therewith, and in bad faith adopted Plaintiff's Mark.

33.   Defendants' illegal counterfeiting and infringing actions, alleged herein, will cause confusion, mistake and deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Infringing Products, and cause consumers to erroneously believe that such Infringing Products are licensed by, or otherwise associated with Plaintiff, thereby irreparably damaging Plaintiff, as evidenced by the numerous complaints Plaintiff has received

from the BBT Customers in regards to the Infringing Products.

34.   In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiff: counterfeited Plaintiff's Mark; infringed Plaintiff's Mark; committed unfair competition; and unfairly and unjustly profited from such activities at Plaintiff's expense.

35.   Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c))**

36.   Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

37.   Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in their Mark and with knowledge that their Counterfeit Products bear counterfeit marks, which are intentional reproductions, copies, and/or colorable imitations of Plaintiff's Mark, or display spurious designations that are identical with, or substantially indistinguishable from Plaintiff's Mark, Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce.

38.   Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of Plaintiff's Mark to packaging, point-of-purchase images and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing,

exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

39.    Defendants' unauthorized use of Plaintiff's Mark on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in Plaintiff's Mark.

40.    Defendants' actions constitute willful counterfeiting of Plaintiff's Mark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

41.    As a direct and proximate result of Defendants' actions alleged herein, Defendants have caused substantial and irreparable injury and damage to Plaintiff and its valuable Mark for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause damage to Plaintiff and its valuable Mark in an amount as yet unknown, but to be determined at trial.

42.    Based on the foregoing, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and

reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademark)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

43.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

44.    Plaintiff has continuously used its Mark in interstate commerce since at least as early as December 18, 2000.

45.    Plaintiff, as the owner and/or exclusive licensee of all right, title and interest in and to the Mark, has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. § 1114.

46.    Defendants are now, and were at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner and/or exclusive licensee of the federal trademark registration for the Mark.

47.    Defendants did not attempt and failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Mark, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Authentic Products and/or related products bearing Plaintiff's Mark into the stream of interstate commerce.

48.    Defendants knowingly and intentionally reproduced, copied, and colorably imitated Plaintiff's Mark and applied such reproductions, copies, or colorable imitations to products, packaging, and/or advertisements used in commerce, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Defendants' Infringing Products.  Defendants

manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Infringing Products bearing, or in connection with, such products, packages, and/or advertisements.

49.    Defendants' egregious and intentional use of Plaintiff's Mark in commerce and Defendants' sale of items bearing Plaintiff's Mark or colorable imitations of Plaintiff's Mark has caused actual confusion, and is likely to continue to cause further confusion, to cause mistake, and to deceive the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiff's Authentic Products, or are otherwise associated with, or authorized by Plaintiff.

50.    Defendants' actions have been deliberate and committed with knowledge of Plaintiff's exclusive rights and goodwill in the Mark, as well as with bad faith and the intent to cause confusion, mistake and deception.

51.    Defendants' continued, knowing and intentional use of Plaintiff's Mark without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Mark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

52.    As a direct and proximate result of Defendants' unlawful and infringing actions as alleged herein, Plaintiff has suffered substantial and irreparable injury, loss and damage to its business and its rights in and to the Mark and the goodwill associated therewith, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause substantial and irreparable injury, loss and damage to Plaintiff and its rights in and to the Mark and the goodwill associated therewith.

53.    Based on such conduct, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions

as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

54.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

55.     Plaintiff, as the owner and/or exclusive licensee of all common law right, title, and interest in and to the Mark, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

56.     Plaintiff's Mark is inherently distinctive and/or has acquired distinctiveness.

57.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to and used marks that are identical or confusingly similar to and constitute reproductions of Plaintiff's Mark, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are Authentic Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved endorsed or licensed by Plaintiff, and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by

consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's Mark and Shoyoroll, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

58.   By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export and by themselves advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Authentic Products, Defendants have traded off the extensive goodwill of Plaintiff and its Authentic Products to induce and did induce, and intends and will continue to induce customers to purchase its Infringing Products, thereby directly and unfairly competing with Plaintiff.   Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through its worldwide marketing, advertising, sales and consumer recognition.

59.   Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute a reproduction of Plaintiff's Mark would cause confusion, mistake, or deception among purchasers, users and the public.

60.   Upon information and belief, Defendants' aforementioned wrongful actions have been  knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its Authentic Products and its Mark.

61.   As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its

Shopkins Products and by depriving Plaintiff of the value of its Mark as a commercial asset, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of Plaintiff's Mark in an amount as yet unknown, but to be determined at trial.

62. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Violation of Deceptive Acts and Practices Unlawful)
### [N.Y. Gen. Bus. Law § 349]

63. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

64. Through Defendants' unlawful, unauthorized, and unlicensed use of Plaintiff's Mark on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling, and/or otherwise dealing in Infringing Products which are identical and/or confusingly similar to Plaintiff's Authentic Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

65. Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.  Such conduct has deceived and materially misleads, or has a

tendency to deceive and materially mislead the consuming public and has injured, and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen, Bus. Law §§ 349.

66.   As a result of Defendants' actions alleged herein, Plaintiff has suffered, and will continue to suffer irreparable harm for which it has no adequate remedy at law.

67.   Pursuant to N.Y. Gen. Bus. Law. § 349(h), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorney's fees.

## FIFTH CAUSE OF ACTION
### (False Advertising Unlawful)
### [N.Y. Gen. Bus. Law § 350]

68.   Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

69.   Without the authorization of Plaintiff, Defendants have used Plaintiff's Mark and/or marks and/or packaging designs that are identical and/or confusingly similar to Plaintiff's Mark in connection with the advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, which are identical and/or confusingly similar to Plaintiff's Authentic Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

70.   Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured, and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen, Bus. Law § 350.

71.   As a result of Defendants' actions alleged herein, Plaintiff has suffered, and will

continue to suffer irreparable harm for which it has no adequate remedy at law.

72.     Pursuant to N.Y. Gen. Bus. Law. § 350(e), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorney's fees.

**SIXTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

73.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

74.     By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export and by themselves advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, Defendants have traded off the extensive goodwill of Plaintiff and its Authentic Products to induce and did induce, and will continue to induce customers to purchase its Infringing Products, thereby directly competing with Plaintiff.  Such conduct has permitted, and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

75.     Defendants' advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion, cause mistake and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

76.     Defendants knew, or by the exercise of reasonable care should have known, that

their advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products and their continuing advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products would cause confusion, cause mistake or deceive purchasers, users and the public.

77.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff and their competitive position while benefiting Defendants.

78.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff have been, and will continue to be, deprived of substantial sales of their Authentic Products in an amount as yet unknown but to be determined at trial, and have been, and will continue to be deprived of the value of their Mark as commercial assets, in an amount as yet unknown but to be determined at trial.

79.    Plaintiff has no adequate remedy at law for Defendants' continuing violation of its rights set forth above.  Plaintiff seeks injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.  Plaintiff seeks exemplary or punitive damages for Defendants' intentional misconduct.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)
### [New York Common Law]

80.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

81.   By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

82.   Defendants' retention of monies gained through its deceptive business practices, infringement, and acts of deceit otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of its federally registered Mark, and

such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a)(3);

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a)(3) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law. § 349(h);

F.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law. § 350(e);

G.      For an award of damages to be proven at trial for common law unfair competition;

H.      For an award of damages in an amount to be proven at trial for unjust enrichment;

I.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

        i.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;

        ii.  directly or indirectly infringing in any manner any of Plaintiff's trademarks, copyrights or other exclusive rights (whether now in existence or hereafter created) including, without limitation, Plaintiff's Mark;

iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's trademarks, copyrights or other exclusive rights (whether now in existence or hereafter created) including, without limitation, Plaintiff's Mark to identify any goods or services not authorized by Plaintiff;

iv. using any of Plaintiff's trademarks, copyrights or other exclusive rights (whether now in existence or hereafter created) including, without limitation, Plaintiff's Mark, or any other marks that are confusingly or substantially similar to Plaintiff's Mark on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products.

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiff.

vi. engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the

advertising and/or dealing in any Infringing Products;

    vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

   viii.   engaging in any other act in derogation of Plaintiff's rights;

    ix.   secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products;

    x.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

    xi.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

J.     For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's trademarks, copyrights or other exclusive rights including, without limitation Plaintiff's Mark, or bear any marks that are confusingly similar to Plaintiff's Mark;

K.      For an order of the court requiring that Defendants deliver up for destruction to Plaintiff any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's trademarks, copyrights or other exclusive rights including, without limitation Plaintiff's Mark, or bear any marks that are confusingly similar to Plaintiff's Mark pursuant to 15 U.S.C. § 1118.

L.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest.

M.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

N.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

O.      For Plaintiff's reasonable attorney's fees;

P.      For all costs of suit; and

For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

23

Dated:  August 19, 2015                Respectfully submitted,

                                       EPSTEIN DRANGEL LLP


                                       BY: /s/ Jason M. Drangel
                                            Jason M. Drangel (JMD 7204)
                                            jdrangel@ipcounselors.com
                                            William C. Wright (WW 2213)
                                            bwright@ipcounselors.com
                                            Ashly E. Sands (AES 7715)
                                            asands@ipcounselors.com
                                            EPSTEIN DRANGEL LLP
                                            60 East 42nd Street, Suite 2410
                                            New York, NY 10165
                                            Telephone:  (212) 292-5390
                                            Facsimile:  (212) 292-5391

                                            *Attorneys for Plaintiff*
                                            *Shoyoroll Corporation*